LUKHARD, COMMISSIONER, VIRGINIA DEPART-
MENT OF SOCIAL SERVICES *v.* REED ET AL.

No. 85–1358.   Argued January 14, 1987—Decided April 22, 1987

SCALIA, J., announced the judgment of the Court and delivered an opinion in which REHNQUIST, C. J., and WHITE and STEVENS, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 383. POWELL, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and O'CONNOR, JJ., joined, *post*, p. 384.

*Thomas J. Czelusta*, Assistant Attorney General of Virginia, argued the cause for petitioner. With him on the briefs were *Mary Sue Terry*, Attorney General, *R. Claire Guthrie*, Deputy Attorney General, and *John A. Rupp*, Senior Assistant Attorney General.

*Glen D. Nager* argued the cause *pro hac vice* for the Secretary of Health and Human Services, as respondent under this Court's Rule 19.6, in support of petitioner. With him on the brief were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Wallace*, and *Marleigh D. Dover*.

*Jill A. Hanken* argued the cause for respondents. With her on the brief were *Martin Wegbreit* and *Claire Curry*.*

---

*A brief of *amici curiae* urging reversal was filed for the State of Illinois et al. by *Neil F. Hartigan*, Attorney General of Illinois, *Roma Jones Stewart*, Solicitor General, *James C. O'Connell, Steven V. Hogroian*, and *Owen M. Field*, Special Assistant Attorneys General, *Linley E. Pearson*, Attorney General of Indiana, *Charles G. Brown*, Attorney General of West Virginia, *Silas B. Taylor*, Deputy Attorney General, *Mary Beth Kershner*, Assistant Attorney General, *Michael J. Bowers*, Attorney General of Georgia, *William C. Joy*, Senior Assistant Attorney General, *Lacy H. Thornburg*, Attorney General of North Carolina, *Cathy J. Rosenthal*, Assistant Attorney General, *T. Travis Medlock*, Attorney General of South Carolina, *Brian McKay*, Attorney General of Nevada, *LeRoy S. Zimmerman*, Attorney General of Pennsylvania, and *Allen C. Warshaw*, Deputy Attorney General.

Briefs of *amici curiae* urging affirmance were filed for Legal Services of North Carolina by *David H. Harris, Jr., Susan M. Perry*, and *Richard M. Taylor, Jr.;* and for Jeannette Rochford by *Robert Mann.*

JUSTICE SCALIA announced the judgment of the Court and delivered an opinion, in which THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE STEVENS join.

In this case, the United States Court of Appeals for the Fourth Circuit held that a state social-services agency could not lawfully treat personal injury awards as income when determining the eligibility of families seeking Aid to Families with Dependent Children (AFDC) benefits. *Reed* v. *Health & Human Services*, 774 F. 2d 1270 (1985). The United States Court of Appeals for the Seventh Circuit has reached the opposite conclusion. *Watkins* v. *Blinzinger*, 789 F. 2d 474 (1986). We granted certiorari to resolve the conflict. 477 U. S. 903 (1986).

I

Under the AFDC program, participating States that provide financial assistance to families with needy, dependent children are partially reimbursed by the Federal Government. 49 Stat. 627, as amended, 42 U. S. C. §§ 601–615 (1982 ed. and Supp. III). Although the States are largely free to determine the appropriate standard of need and the level of assistance, they must administer their assistance plans in conformity with applicable federal statutes and with regulations promulgated by the United States Department of Health and Human Services (HHS). Those statutes require States to consider a family's "income and resources" when determining whether or not it is needy, 53 Stat. 1379, as amended, 42 U. S. C. § 602(a)(7)(A) (1982 ed., Supp. III), and prohibit them from providing AFDC benefits for any month in which either income or resources exceed state-prescribed limits (subject to a federal ceiling), 95 Stat. 844, as amended, 42 U. S. C. §§ 602(a)(7)(B), 602(a)(17), 602(a)(18) (1982 ed., Supp. III).

Because income eligibility and resource eligibility are separately computed (and also because state limits for the two generally differ), whether and for how long a family that acquires a sum of money is rendered ineligible for AFDC bene-

fits may depend on whether the sum is classified as income or as a resource. Prior to 1981, however, the importance of the classification was minimized by an HHS requirement that States treat any income received in a given month as a resource in following months. Thus, a family that received an amount of income that exceeded the State's income limit would be automatically ineligible for one month; whether or not it remained ineligible in subsequent months would depend on whether the amount of that income that had not yet been spent, combined with the value of the family's other resources, exceeded the State's resource limit. The Secretary of HHS became concerned that AFDC recipients who acquired a large amount of income had an incentive to spend it as rapidly as possible, in order to regain eligibility by reducing their resources to a level beneath the State's resource limit. To solve this problem, the Secretary proposed and Congress passed an amendment to the AFDC statute. Under that amendment, AFDC recipients who receive an amount of income that exceeds the State's standard of need are rendered ineligible for as many months as that income would last if the recipients spent an amount equal to the State's standard of need each month. Section 2304 of the Omnibus Budget Reconciliation Act of 1981 (OBRA), 95 Stat. 845, as amended, 42 U. S. C. § 602(a)(17) (1982 ed., Supp. III).

Because the OBRA amendment applies by its terms only to income, the distinction between income and resources took on new importance. If a given sum of money were treated as a resource, the family that received the sum would be ineligible only until it spent enough of the sum to bring its resources down to the State's resource limit; but if the sum were treated as income, no matter how much was spent, the family would remain ineligible for the statutory period. In response to the OBRA amendment, the Virginia Department of Social Services (the agency responsible for administering Virginia's AFDC program) revised its regulations to

treat various lump-sum payments, including personal injury awards, as income rather than as resources. Virginia Department of Social Services, ADC Manual (Va. ADC Manual) § 305.4C (Jan. 1983), App. to Pet. for Cert. 71.[1] It did not, however, alter its policy of treating the proceeds of the sale or conversion of real or personal property—including property damage awards—as resources. § 303.3, App. 25.

Respondents, who had received personal injury awards and were disqualified from Virginia's AFDC program for varying periods pursuant to Virginia's revised regulations, filed a class action against the Secretary and petitioner Lukhard, the Commissioner of the Virginia Department of Social Services, in the United States District Court for the District of Western Virginia. They alleged that treating personal injury awards as income was inconsistent with the federal AFDC statute, and they sought monetary, injunctive, and declaratory relief under Rev. Stat. § 1979, as amended, 42 U. S. C. § 1983, 5 U. S. C. §§ 701–706, and 28 U. S. C. §§ 2201–2202. After certifying a class of those whose AFDC benefits had been or would be decreased as a result of Virginia's revised regulations, the District Court granted summary judgment in the class' favor. It held that the common meaning of the term "income" precluded application of that term to personal injury awards, and that it was irrational for Virginia to treat personal injury awards as income but at the same time treat awards for property loss as

---

[1] The revised regulations also permitted recipients to deduct from such a payment any directly related expenses that were incurred prior to or within 30 days after receipt of the payment. Va. ADC Manual § 305.4C (Jan. 1983), App. to Pet. for Cert. 72. During the pendency of this lawsuit, Congress amended the OBRA amendment to give States the option of reducing the period of ineligibility otherwise mandated so as to take into account various expenditures related to the lump-sum payment. Section 2632(a) of the Deficit Reduction Act of 1984, 98 Stat. 1141, 42 U. S. C. § 602(a)(17) (1982 ed., Supp. III). Virginia has since availed itself of this option. Va. ADC Manual § 305.4C (Oct. 1984), App. to Pet. for Cert. 83–86.

resources. The District Court therefore issued an injunction forbidding Lukhard to apply the revised regulations to recipients of personal injury awards, ordering him to begin paying AFDC benefits to the named plaintiffs and other class members who would presently have been receiving them but for application of the revised regulations, and requiring him to notify AFDC recipients who had been deprived of past AFDC benefits as a result of the revised regulations. The court declined, however, to order Lukhard to pay retroactive AFDC benefits, and stayed the injunction pending appeal except insofar as it required Lukhard to begin paying AFDC benefits to the named plaintiffs. Lukhard and the Secretary appealed and the respondents cross-appealed. After the Court of Appeals for the Fourth Circuit affirmed the judgment in all respects, *Reed* v. *Health & Human Services*, 774 F. 2d 1270 (1985), Lukhard filed this petition. The Secretary did not file a separate petition but supported Lukhard's petition and supports Lukhard's position on the merits.

## II

Respondents' principal contention is that Virginia's revised regulations are inconsistent with the meaning of "income" and "resources" as those terms are used in the AFDC statute. To support this argument they first advance the broader proposition that it does violence to common usage to interpret "income" to include personal injury awards. This argument begins from the premise that since personal injury awards are purely compensatory, they do not result in any gain to their recipients. And since both general and legal sources define "income" as involving gain, see, *e. g.*, Webster's Third New International Dictionary 1143 (1976) ("a gain or recurrent benefit that is usu. measured in money . . ."); 42 C. J. S., Income, p. 531 (1944) ("In common speech 'income' generally is understood as gain or profit . . ." (footnote omitted)); *Eisner* v. *Macomber*, 252 U. S. 189, 207

(1920) ("'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets . . ." (quoting *Stratton's Independence, Ltd.* v. *Howbert,* 231 U. S. 399, 415 (1913); *Doyle* v. *Mitchell Brothers Co.,* 247 U. S. 179, 185 (1918))), respondents conclude that personal injury awards cannot fairly be characterized as income. But the premise that personal injury awards cannot involve gain is obviously false, since they often are intended in significant part to compensate for the loss of gain, *e. g.,* lost wages. See *Watkins* v. *Blinzinger,* 789 F. 2d, at 476. Since the gain would have been income, surely at least that part of a personal injury award that replaces it must also be income.[2] More importantly, however, as Lukhard and the Secretary point out, general and legal sources also commonly define "income" to mean "any money that comes in," without regard to any related expenses incurred and without any requirement that the transactions producing the money result in a net gain. See, *e. g.,* 5 Oxford English Dictionary 162 (1933) ("That which comes in . . . (considered in reference to its amount, and commonly expressed in money); . . . receipts . . ."); 42 C. J. S., Income, p. 529 (1944) ("Generally or ordinarily the term means all that comes in; . . . something which is paid over and delivered to the recipient; . . . without reference to the outgoing expenditures . . ." (footnotes omitted)); *Heckler* v. *Turner,* 470 U. S. 184 (1985) ("income" under the AFDC statute means gross income, without reference to expenses reasonably attributable to its earning). *Heckler* is particularly significant, since there we indicated that the part of an employee's salary that is allocated to work-related expenses—clearly not a gain in the sense that term is used by respondents—is properly treated as "income" under the AFDC statute. *Id.,* at 202. Although that con-

---

[2] Moreover, as we discuss below, see *infra,* at 380–383, other typical components of personal injury awards, including compensation for pain and suffering, can reasonably be treated as gain under the AFDC statute.

clusion was based in part on a provision not involved in this case, it demonstrates that the AFDC statute itself contradicts the theory that payments that do not constitute gain (as respondents use the term) to their recipients cannot reasonably be described as "income." Thus, contrary to respondents' assertion, Virginia's revised regulations are consistent with a perfectly natural use of "income."

Respondents also seek to derive support from the fact that personal injury awards are not treated as income under the Internal Revenue Code, the Food Stamp program, or the HHS poverty guidelines. See 26 U. S. C. § 104(a); 91 Stat. 962, 7 U. S. C. § 2014(d)(8); 48 Fed. Reg. 7010, 7011 (1983). But in each of these instances there is an *express* provision that personal injury awards are not to be treated as income — which causes them not only to fail to support the proposition that the term "income" automatically excludes personal injury awards, but to support the opposite proposition that absent express exclusion it embraces them. Moreover, the fact that Congress was silent in the AFDC statute but has elsewhere been explicit when it wished to exclude personal injury awards from income tends to refute rather than support a legislative intent to exclude them from AFDC computations.[3] Cf. *Russello* v. *United States*, 464 U. S. 16, 23

---

[3] The dissent apparently thinks it appropriate to speculate upon what Congress *would* have said if it *had* spoken. *Post*, at 389 ("[I]f Congress had considered the question, it is reasonable to believe that it would have . . . excluded [personal injury awards] from income"). As we demonstrate below, it also is reasonable to believe that Congress would have included personal injury awards in income. More importantly, however, the legality of Virginia's policy must be measured against the AFDC statute Congress passed, not against the hypothetical statute it is most "reasonable to believe" Congress would have passed had it considered the question of personal injury awards. For the purpose of determining the application of an existing agency-interpreted statute to a point on which "Congress did not actually have an intent," *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 845 (1984), we have held that "a court may not substitute its own construction . . . for a reasonable interpretation made by the administrator of an agency." *Id.*, at 844. As we note below,

(1983). Nor is there any merit to respondents' slightly different argument that since the relevant provisions of the Food Stamp program, the HHS poverty guidelines, and the AFDC statute have the common goal of defining who is needy, they should be presumed to have a common definition of "income"—one that necessarily excludes personal injury awards. The explicit differences between the definition of "income" in the Food Stamp program and the HHS poverty guidelines on the one hand and the AFDC statute on the other are simply too great to permit any such presumption. Compare 91 Stat. 962, 7 U. S. C. § 2014(d)(8) (Food Stamp program excludes all nonrecurring lump-sum payments, including retroactive lump-sum Social Security benefits), and 48 Fed. Reg. 7010, 7011 (1983) (HHS poverty guidelines exclude capital gains, gifts, and lump-sum inheritances), with Brief for Respondents 47 (conceding that retroactive Social Security benefits and other lump-sum payments that represent a true gain are income under the AFDC statute).

Respondents' next contention is that Virginia's treatment of personal injury awards is inconsistent with the administrative and legislative history of the AFDC statute. They first argue that for many years, and at least until 1981, HHS in fact took the position that personal injury awards were not "income" under the AFDC statute. But the materials upon which respondents rely do not support this contention, and indicate at most that HHS took no position on the question. See HHS Handbook of Public Assistance Administration, Part IV, S–3120, Supplement for Administrative Use (Sept. 6, 1957), App. 58 (retroactive Social Security payments are income, but an award to compensate for the loss of a hand or foot might not be); HHS Memorandum of June 7, 1973, App. 55–56 (retroactive Social Security payments are income); Brief for United States as *Amicus Curiae* in *Lockhart* v. *Harden*, No. C74–390A (ND Ga.), App. 61 (HHS regula-

———

see *infra* this page and 378–379, Virginia's policy is consistent with the Secretary's interpretation.

tions require that retroactive Social Security payments be treated as income but do not require that awards for damages be so treated). In fact, as Lukhard and the Secretary point out, there is evidence that HHS has for many years interpreted the AFDC statute to at least *permit* States to treat personal injury awards as income. See, *e. g.*, 51 Fed. Reg. 9191, 9196 (1986) ("[U]nder longstanding federal policy . . . , a State agency has had the option to treat [*e. g.*, personal injury awards] as resources instead of as income"); HHS Letter of October 17, 1983, App. 66 ("Based on longstanding precedent, States have historically had the option to consider nonrecurring lump-sum payments as either unearned income or resources. With the implementation of [the OBRA amendment], States continued to exercise this latitude"); HHS Memorandum of July 6, 1983, App. 47 (under current HHS policy, States are free to treat insurance settlements either as income or as resources; California apparently treats them as income); HHS Letter of April 8, 1982, App. 62–63 (States are free to treat damage claim settlements as income or as resources). See also Brief for State of Illinois *et al.* as *Amici Curiae* 5 (HHS has permitted States to treat personal injury awards as income under the OBRA amendment).[4] Thus, the Secretary's interpretation of the AFDC statute— which is entitled to deference, see, *e. g.*, *Chemical Manufacturers Assn.* v. *Natural Resources Defense Council, Inc.*,

---

[4] Respondents observe that none of the evidence relied upon by Lukhard and the Secretary antedates the passage of the OBRA amendment. Although true, the observation is of dubious significance. Older documents *demonstrating* the existence of a longstanding interpretation would of course be better evidence than are recent documents *asserting* its existence. But in the absence of any contrary evidence, the latter form of evidence is certainly sufficient to support a conclusion that the interpretation existed. Similarly, although respondents observe that the record does not reveal whether any States actually availed themselves of the option allegedly given them prior to passage of the OBRA amendment, we see no reason to draw any inference at all from that lacuna.

470 U. S. 116, 125 (1985)[5]—actually undermines rather than supports respondents' claim that Virginia cannot lawfully treat personal injury awards as income.

Respondents also make two arguments based upon the legislative history of the 1981 OBRA amendment. First, they argue that the Congress that passed the OBRA amendment must have been aware of HHS' longstanding position that "income" excluded personal injury awards, and that its use of "income" in the OBRA amendment therefore necessarily indicated an intent that the term be interpreted in that manner. It is of course not true that whenever Congress enacts legislation using a word that has a given administrative interpretation it means to freeze that administrative interpretation in place. See *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90, 100–101 (1939). But if that were the case here, it would damage rather than aid respondents' cause, since, as we have seen, HHS' position at the time of the OBRA amendment was that it was permissible for States to treat personal injury awards as income.

At oral argument, respondents sought to derive support from a legislative hearing conducted while the OBRA amendment was under consideration, in which the Secretary submitted to the House Ways and Means Committee a document estimating that the amendment would eliminate 5,000 families from the AFDC rolls each year. Hearings on Tax Aspects of the President's Economic Program before the House Committee on Ways and Means, 97th Cong., 1st Sess., pt. 1, pp. 265–266 (1981), App. 75–76. The record suggests

---

[5] After this suit was filed, the Secretary proposed a rule *requiring* States to treat all lump-sum payments as income. 49 Fed. Reg. 45558, 45568 (1984). Such a rule has since been promulgated. 45 CFR § 233.20(a)(3)(ii)(F) (1986). Lukhard and the Secretary argue that the Secretary's determination that this rule is consistent with the AFDC statute and the OBRA amendment is entitled to deference, while respondents argue that the rule was invalidly promulgated and is in any event due no deference. Since we uphold Virginia's practice without reference to the new HHS regulation, we need not reach these questions.

that Virginia has been terminating over 400 families each year under the revised regulations it promulgated to implement the OBRA amendment. Since Virginia has only 1.6% of the national AFDC caseload, respondents argue, it should only be terminating 80 families each year according to the Secretary's estimate. But even granting the accuracy of respondents' numerical analysis—which petitioner and the Secretary have had no opportunity to contest—and ignoring the dubious authority of an unexplained forecast made during a committee hearing, the disparity respondents note does not provide the faintest support for an inference that the Congress which passed the OBRA amendment understood the AFDC statute to exclude personal injury awards from income. The record indicates that only about one-third of the families removed from the rolls in Virginia were removed as a result of personal injury awards; since the number of remaining terminations still far exceeds the Secretary's forecast (about 270 instead of 80), the disparity certainly is not explicable by Virginia's decision to treat personal injury awards as income. One is left with the suspicion that the error was in the Secretary's forecast. Nothing respondents have identified in the legislative history of the OBRA amendment supports the conclusion that Virginia's revised regulations are unlawful.

Respondents' penultimate argument is that logic requires personal injury awards to be treated as resources rather than income. The argument rests upon the following syllogism: (1) healthy bodies are resources; (2) personal injury awards merely compensate for damage to healthy bodies; and therefore (3) personal injury awards necessarily are resources too. We have already noted that the minor premise of this syllogism is false, see *supra*, at 375–376. More importantly, however, so is the major premise. Although there is a sense in which a healthy body can be said to be a resource, it certainly is not one within the meaning of the AFDC statute and regulations, which count only real and personal property (including liquid assets). See 95 Stat. 844,

as amended, 42 U. S. C. § 602(a)(7)(B) (1982 ed., Supp. III); 45 CFR §§ 233.20(a)(3)(i)(B), (ii)(E) (1986). Since healthy bodies are worth far more than the statute's $1,000 family resource limit, 42 U. S. C. § 602(a)(7)(B), acceptance of respondents' major premise would render every family ineligible for AFDC benefits. The fact that the AFDC statute and its implementing regulations consider only real and personal property in determining families' resources permits (if it does not indeed require) the conclusion that personal injury awards are compensation for diminution of well-being of a kind not covered by the AFDC statute, except to the extent they compensate for lost wages (to which extent they clearly are gain, see *supra*, at 375) or for economic expenses caused by the injury (to which extent Virginia permits them to be in large part offset, see n. 1, *supra*). Thus, personal injury awards are almost entirely a gain in well-being, as well-being is measured under the AFDC statute, and can reasonably be treated as income even on respondents' definition of the term.

Once this is understood, it is clear that Virginia's policy of treating personal injury awards as income but property damages awards as resources is also reasonable. The former can be viewed as increasing their recipients' pecuniary well-being, and the latter as merely restoring resources to previous levels. The existence of this distinction, coupled with the substantial deference owed to the Secretary's conclusion that Virginia's revised regulations are consistent with HHS' regulations, see, *e. g.*, *Lyng* v. *Payne*, 476 U. S. 926, 939 (1986), leads us to reject respondents' argument that the difference in treatment violates HHS' regulation requiring that "eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups . . . ." 45 CFR § 233.10(a)(1) (1986).[6]

---

[6] As has already been noted, since this suit was filed Virginia has altered its treatment of personal injury awards by adopting a regulation

It is of course true that, by considering only real and personal property as the measure of well-being, the AFDC program evaluates need in a way that does not reflect the fullness of life. That portion of a personal injury award which constitutes compensation for loss of earnings will not result in a loss of eligibility, since it merely replaces future income that would otherwise have been earned; but the portion attributable to pain and suffering replaces no other economic income, and will reduce AFDC payments. It can reasonably be urged that a family with monthly pain-and-suffering-award income but with a family member in physical and emotional pain is *not* better off than the family without that additional income but also without that suffering. Physical and emotional well-being, however, is not what the AFDC statute is designed to take into account—as is evident from the fact that there is no argument for increasing AFDC payments above the normal income limit where pain and suffering exists *without* a tortfeasor who is compensating it. Compensating for the noneconomic inequities of life is a task

---

reducing the ineligibility period established by the OBRA amendment to take into account various expenditures related to the award and other equitable considerations. Va. ADC Manual § 305.4C (Oct. 1984), App. to Pet. for Cert. 83–86. Moreover, the Secretary contends that a new regulation he has promulgated, 45 CFR § 233.20(a)(3)(ii)(F) (1986), requires Virginia to treat property damages awards as income, thus rendering prospectively moot respondents' claim that Virginia's disparate treatment violates the HHS regulation. Respondents claim, however, that the new regulation is invalid because improperly promulgated, that it does not require Virginia to alter its treatment of property damages awards, and that even if it did it would not result in equal treatment of personal injury awards and property damages awards. We need not consider the consequences of these subsequent developments. The legality of the original disparity in treatment is still a live issue, since its resolution will determine whether respondents were entitled to the AFDC benefits they have received under the injunction issued by the District Court. And our conclusion that the original disparity was not unreasonable necessarily implies that the diminished disparity created by Virginia's subsequently more lenient treatment of personal injury awards is not unreasonable.

daunting in its complexity, and the AFDC statute is neither designed nor interpreted unreasonably if it leaves them untouched.

Finally, we do not agree with the dissent's contention that our holding "'override[s] the States' traditional power to define the measure of damages applicable to state-created causes of action.'" *Post*, at 389 (quoting *Norfolk & Western R. Co.* v. *Liepelt*, 444 U. S. 490, 500, n. 3 (1980) (BLACKMUN, J., dissenting)). That could not possibly be so, since in this case Virginia *wants* to treat the proceeds of personal injury awards as income. It is a peculiar solicitude for States' prerogatives that would prevent Virginia from striking its own balance between directing limited AFDC funds to the least wealthy and compensating tort victims. It is true that the Secretary has now promulgated a regulation requiring States to treat personal injury awards as income under the AFDC statute. See n. 5, *supra.* But since this is not a case in which a State challenges that regulation, the dissent's objection is simply irrelevant.

## III

Respondents have not demonstrated that Virginia's policy of treating personal injury awards as income is inconsistent with the AFDC statute or HHS' regulations. The contrary judgment of the Court of Appeals is

*Reversed.*

JUSTICE BLACKMUN, concurring in the judgment.

I join the judgment of the Court but not the opinion of the plurality, for I would base my vote to reverse not on an endorsement of the original Virginia interpretation but, flatly, on the deference that is due the Secretary of Health and Human Services in his interpretation of the governing statutes. In a statutory area as complicated as this one, the administrative authorities are far more able than this Court to determine congressional intent in the light of experience in the field. If the result is unacceptable to Congress, it has

only to clarify the situation with language that unambiguously specifies its intent.

JUSTICE POWELL, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE O'CONNOR join, dissenting.

Today the Court holds that personal injury awards may be treated as income for the purpose of determining whether a family is eligible for Aid to Families with Dependent Children (AFDC). Because such treatment is inconsistent with the compensatory nature of personal injury awards, and may work a substantial hardship on needy families that Congress intended to assist through the AFDC program, I dissent.

## I

Congress established the AFDC program, 42 U. S. C. §§ 601–615 (1982 ed. and Supp. III), to assist needy children and those who care for them. *Shea* v. *Vialpando*, 416 U. S. 251, 253 (1974). The AFDC statute provides that a family is eligible for AFDC benefits if its income and resources are not sufficient to maintain it at a subsistence level established by the State. The statute does not define either "income" or "resources."[1] Prior to 1981, excess income received in one month was counted as a resource in succeeding months. The Secretary of Health and Human Services (HHS) concluded that needy families receiving lump sums of nonrecurring income might spend the money as rapidly as possible to reduce their resources and regain eligibility for AFDC benefits. In 1981, Congress responded to the Secretary's concern by amending the statute to provide that a family receiving ex-

---

[1] The AFDC statute provides that the States must exclude from resources the family home and one automobile worth up to $1,500. 42 U. S. C. § 602(a)(7)(B); 45 CFR § 233.20(a)(3)(i) (1986). The States also are required to disregard certain earnings of family members and relatives in determining income. 42 U. S. C. §§ 602(a)(8)(A), 602(a)(31). Congress provided no further guidance to the Secretary and the States in defining "income" and "resources."

cess income in one month is ineligible for AFDC benefits for the number of months that the excess income would support the family at a subsistence level. Omnibus Budget Reconciliation Act of 1981, 95 Stat. 845, 42 U. S. C. § 602(a)(17) (1982 ed., Supp. III). Although the 1981 amendments changed the treatment of excess income, "neither the language of [the amendment] nor its legislative history indicates that Congress intended to change the meaning of 'income' in 1981." Brief for Secretary of HHS 15. Accordingly, the Secretary advised the States to adhere to their existing definitions of income. 47 Fed. Reg. 5648, 5656 (1982).

Virginia responded to the 1981 amendments by promulgating a rule that payments for personal injuries must be counted as income in determining eligibility for AFDC benefits. Virginia Department of Social Services, ADC Manual (Va. ADC Manual) § 305.4C (Jan. 1983), App. to Pet. for Cert. 71. Under the Virginia regulation at issue in this case, medical and legal expenses incurred prior to or within 30 days after the receipt of the award were not counted in income. The remainder of the personal injury award, "representing pain and suffering, loss of earning capacity, future medical expenses, and punitive damages," was included in income. Brief for Petitioner 5, n. 5.[2] The named re-

---

[2] Virginia subsequently modified its rule in response to a congressional amendment giving States the option of reducing the period of ineligibility to account for expenditures related to a lump-sum payment. Section 2632 of the Deficit Reduction Act of 1984, 98 Stat. 1141, 42 U. S. C. § 602(a)(17) (1982 ed., Supp. III). The State now provides that the period of ineligibility must be reduced to reflect future medical expenses. Va. ADC Manual § 305.4C (Oct. 1984), App. to Pet. for Cert. 84.

In addition, the Secretary recently promulgated a rule requiring the States to treat personal injury awards as income. 45 CFR § 233.20 (a)(3)(ii)(F) (1986). The plurality declines to consider the Secretary's new rule. *Ante,* at 379, n. 5. It nevertheless concludes that Virginia's decision to treat personal injury awards as income during the period at issue in this case was in accord with the Secretary's prior interpretation

spondents, who had been entitled to AFDC benefits ranging from $181 to $255 per month, received personal injury or worker's compensation awards of between $700 and about $10,250. App. 13–19; Brief for Respondents 3–5. As a result, the Virginia Department of Social Services ruled them ineligible for AFDC benefits for periods of from 2 months to 27 months. The respondents spent the awards primarily on basic living expenses, repayment of debts, and items such as used automobiles and appliances. App. 13–19. In each case, the families exhausted the modest awards long before they regained eligibility for AFDC benefits.

## II

The AFDC statute, as noted above, does not define "income." "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin* v. *United States*, 444 U. S. 37, 42 (1979). The plurality recognizes that income commonly is defined as " ' "the gain derived from capital, from labor, or from both combined," provided it be understood to include profit gained through a

---

of the AFDC statute, and so is entitled to deference. *Ante*, at 378–379. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–845 (1984). Prior to the passage of the 1981 amendments, however, the Secretary's only comment on this subject was that "a settlement of industrial compensation as the result of loss of hand or foot *might* represent a 'lump sum' payment." HHS Handbook of Public Assistance Administration, Part IV, S–3120, Supplement for Administrative Use (Sept. 6, 1957), App. 58 (emphasis added). Moreover, as the plurality concedes, there is no evidence in the record that any State included personal injury awards in income prior to the 1981 amendments. *Ante*, at 378, n. 4. Based on this record, I conclude that the Secretary took no position on the treatment of personal injury awards prior to 1981.

JUSTICE BLACKMUN would defer to the Secretary's interpretation of the statute. Because I conclude that the Secretary's interpretation is inconsistent with the statute, I do not think it is entitled to the customary deference.

sale or conversion of capital assets . . . .'" *Ante*, at 375 (quoting *Eisner* v. *Macomber*, 252 U. S. 189, 207 (1920) (quoting *Stratton's Independence, Ltd.* v. *Howbert*, 231 U. S. 399, 415 (1913); *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179, 185 (1918))). In light of *Macomber*, which held that stock dividends are not taxable income, the Solicitor of Internal Revenue concluded:

> "If an individual is possessed of a personal right that is not assignable and not susceptible of any appraisal in relation to market values, and thereafter receives either damages or payment in compromise for an invasion of that right, it can not be held that he thereby derives any gain or profit. It is clear, therefore, that the Government can not tax him on any portion of the sum received." I–1 Cum. Bull. 93 (1922).

In a later tax case, the Court defined income as "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *Commissioner* v. *Glenshaw Glass Co.*, 348 U. S. 426, 431 (1955). In *Glenshaw Glass*, the Court observed that "[d]amages for personal injury are by definition compensatory only," *id.*, at 432, n. 8, and cited "[t]he long history of departmental rulings holding personal injury recoveries nontaxable on the theory that they roughly correspond to a return of capital . . . ," *ibid.* (citing 2 Cum. Bull. 71 (1920); I–1 Cum. Bull. 92, 93 (1922); VII–2 Cum. Bull. 123 (1928); 1954–1 Cum. Bull. 179, 180).

Congress continues to exclude personal injury awards from income under the Internal Revenue Code. 26 U. S. C. § 104(a). Congress also excludes personal injury awards from income for the purpose of determining eligibility for food stamps, 7 U. S. C. § 2014(d)(8), and under the HHS poverty guidelines, 48 Fed. Reg. 7010, 7010–7011 (1983).[3] In-

---

[3] The plurality concludes that "[t]he explicit differences between the definition of 'income' in the Food Stamp program and the HHS poverty

deed, the plurality does not cite a single statute in which Congress has defined income to include personal injury awards, and I am aware of none.

The plurality nevertheless concludes that Virginia reasonably interpreted the AFDC statute to include personal injury awards in income, even if such awards do not result in any gain to the recipient. *Ante*, at 375–376. The plurality observes that the Internal Revenue Code, the Food Stamp statute, and the HHS poverty guidelines *expressly* exclude personal injury awards from income. In the plurality's view, "the fact that Congress was silent in the AFDC statute but has elsewhere been explicit when it wished to exclude personal injury awards from income tends to refute rather than support a legislative intent to exclude them from AFDC computations." *Ante*, at 376 (citation omitted; footnote omitted). This inference from congressional silence is unwarranted. Congress made a considered decision to exclude personal injury awards from income for purposes of the Internal Revenue Code and the Food Stamp statute. In contrast, as the Court of Appeals for the Seventh Circuit observed, "The inescapable fact is that Congress wanted to compel recipients of AFDC to budget lump-sum receipts of 'income' but did not consider what 'income' might be." *Watkins* v. *Blinzinger*, 789 F. 2d 474, 480 (1986).

---

guidelines on the one hand and the AFDC statute on the other are simply too great" to allow a presumption that they share a common definition of income. *Ante*, at 377. It is true that "income" is defined to exclude all nonrecurring lump-sum payments for purposes of the Food Stamp program, 7 U. S. C. § 2014(d)(8), and that the HHS poverty guidelines exclude capital gains, gifts, and lump-sum inheritances, 48 Fed. Reg. 7010, 7011 (1983). It also is undisputed that lump-sum payments representing a gain to the family, such as retroactive Social Security payments, must be included in income under the AFDC program. But the decision to include some lump-sum gains under the AFDC program that are excluded under other poverty programs does not indicate that Congress also intended to include payments that do *not* represent a gain, and that Congress has not included in income under *any* program.

The fact that Congress did not define income for purposes of the AFDC statute hardly justifies an assumption that it considered the narrower question whether personal injury awards should be included in income. On the contrary, if Congress had considered the question, it is reasonable to believe that it would have treated personal injury awards as it has in a variety of other circumstances and excluded them from income. Finally, as discussed below, the effect of including personal injury awards in income is to deprive AFDC families of the benefits of tort and worker's compensation remedies, most of which are provided by state law. I would not infer from the silence of Congress a "purpose to override the States' traditional power to define the measure of damages applicable to state-created causes of action." *Norfolk & Western R. Co.* v. *Liepelt*, 444 U. S. 490, 500, n. 3 (1980) (BLACKMUN, J., dissenting).[4]

The plurality also concludes that personal injury awards "can reasonably be treated as gain." *Ante*, at 374–375, and n. 2. To be sure, some components of personal injury awards do result in gain to the plaintiff. Punitive damages, in the exceptional case in which they are awarded, are a windfall to the plaintiff rather than compensation. See *Commissioner* v. *Glenshaw Glass Co.*, *supra* (punitive damages are taxable income). As a practical matter, an impoverished family is unlikely to receive a large award for lost income. If it does, however, it is reasonable to treat such an award as income. See *ante*, at 375. I cannot agree, however, that it is reasonable to treat the entire personal injury award as income. Damages for pain and suffering, physical injury, dis-

---

[4] The plurality asserts that this objection is "simply irrelevant," *ante*, at 383, because Virginia officials chose to treat personal injury awards as income. But Congress could not know in advance whether the treatment of personal injury awards would be left to the States. Indeed, as noted above, the Secretary now *requires* the States to include personal injury awards in income. See n. 2, *supra*. In my view, the possibility that AFDC families would be deprived of state tort remedies is sufficient to preclude inclusion of personal injury awards in income.

figurement, loss of consortium, and the like are intended to compensate the recipient for nonpecuniary losses. In other contexts, Congress excludes the full amount of personal injury awards from income, to avoid the necessity for "a complex and administratively burdensome system" or to "confer a humanitarian benefit on the victim or victims of the tort." *Norfolk & Western R. Co.* v. *Liepelt, supra,* at 501 (BLACKMUN, J., dissenting).

The plurality recognizes the elementary fact that "a family with monthly pain-and-suffering-award income but with a family member in physical and emotional pain is *not* better off than the family without that additional income but also without that suffering." *Ante,* at 382 (emphasis in original). The plurality nevertheless concludes that the AFDC program is not designed to take into account physical and emotional well-being. But tort law and workers' compensation statutes *are* designed to take these into account. The AFDC statute surely is not designed to deprive impoverished families of remedies for personal injury, most of which are provided by state law. To be sure, "there is no argument for increasing AFDC payments above the normal limit where pain and suffering exists *without* a tortfeasor who is compensating it." *Ibid.* (emphasis in original). By the same token, there is no argument for *decreasing* AFDC payments for families who are free of pain and suffering.[5]

---

[5] In my view, Virginia's treatment of personal injury awards was inconsistent with the Secretary's "equitable treatment regulation," which states that "the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment." 45 CFR § 233.10(a)(1) (1986). During the period at issue in this case, Virginia treated money received as a result of a property loss as a resource rather than income. Va. ADC Manual § 303.3 (Jan. 1983), App. 25. Thus, if an AFDC family received compensation for a damaged automobile it could spend the money as it wished, but if it received compensation for an injury to a family member, it was obliged to use the money to meet basic needs. The plurality concludes that casualty awards do not increase their recipients' well-being, since they "merely re-

During the period at issue in this case, the Virginia Department of Social Services also included in income moneys intended for continuing medical and rehabilitative expenses. See Brief for Petitioner 5, n. 5.[6] Thus, the Virginia regulation put impoverished families to a hard choice between obtaining medical care and providing for the basic needs of their children. One of the named respondents, Ona Mae Reed, actually faced this choice: She could not afford to see a physician while her family was ineligible for AFDC benefits. App. 15. I cannot accept the Court's conclusion that Congress intended to permit such a harsh result.

## III

It is beyond dispute that "[c]ompensating for the noneconomic inequities of life is a task daunting in its complexity . . . ." *Ante*, at 382–383. As I view this case, however, the issue presented is relatively straightforward. Our legal system compensates individuals for personal injuries by awarding damages in tort actions and workers' compensation proceedings. In a variety of circumstances, Congress has

---

stor[e] resources to previous levels." *Ante*, at 381. Because personal injury awards are designed to compensate individuals rather than to increase their level of well-being, I conclude that it is unreasonable to treat personal injuries less favorably than property losses. Virginia's treatment of awards for property losses also demonstrates that it failed to adhere consistently to a definition of income as "any money that comes in." See *ante*, at 375.

[6] During this period, Virginia excluded from income only those amounts of the award used for medical care, rehabilitation, and legal services incurred prior to or within 30 days after the receipt of the award. See *supra*, at 385; Va. ADC Manual § 305.4C (Jan. 1983), App. to Pet. for Cert. 72. Petitioner concedes that "the amount of a lump sum personal injury award subject to the rule is that portion representing pain and suffering, loss of earning capacity, *future medical expenses*, and punitive damages." Brief for Petitioner 5, n. 5 (emphasis added). As noted above, n. 2, *supra*, Virginia has amended its rules to provide that the period of ineligibility must be reduced to reflect medical expenses incurred subsequent to receipt of the lump sum. Va. ADC Manual § 305.4C (Oct. 1984), App. to Pet. for Cert. 84.

recognized that injured persons and their families should be permitted to retain the full amount of these awards, awards that for the most part are compensatory in nature. It is unjust, and inconsistent with the basic purposes of the AFDC statute, to deny needy families the compensation our legal system affords to the rest of society. Accordingly, I dissent.