Isaiah LaBEAUX, Jr., for Gerome P. LaBEAUX, a minor, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. C90–2019.

United States District Court, N.D. Iowa, E.D.

March 5, 1991.

See also 465 N.W.2d 541.

Harry W. Zanville, Zanville Law Office, Waterloo, Iowa, for plaintiff.

Ana Maria Martel, Asst. U.S. Atty., N.D. Iowa, Cedar Rapids, Iowa, for defendant.

## ORDER

HANSEN, District Judge.

This matter is before the court on plaintiff's motion for summary judgment seeking reversal of the final decision of the Secretary of Health and Human Services and request for oral argument, filed September 11, 1990, and defendant's brief in support of the Secretary's decision, filed October 29, 1990.

In this action, plaintiff seeks reversal of the final decision of the Secretary terminating plaintiff's supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381–83c. Plaintiff has exhausted all administrative remedies, and the action is properly before the court at this time. The nature of this court's review of the Secretary's final decision is set forth in 42 U.S.C. § 405(g).

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive....

42 U.S.C. § 405(g).

The pertinent facts of this case are as follows. Plaintiff, Gerome P. LaBeaux, was born on January 2, 1982, suffering severe brachial plexus and neurological and cerebral injuries. Plaintiff's brief, filed September 11, 1990, at 1. His parents, Dorothy and Isaiah LaBeaux, as co-conservators, brought a law action in the Iowa District Court for Black Hawk County alleging that Gerome LaBeaux had suffered serious and permanent injuries caused by the negligence of Dr. Thomas F. Thornton and St. Francis Hospital. *Id.* The parties entered into a settlement agreement, approved by the court on December 6, 1985, which provided for the following payments in exchange for binding releases:

1. An immediate $112,500 cash payment.

2. The sum of $750 paid monthly through a structured settlement annuity to plaintiff with 20 years guaranteed or for his life to be divided as follows:

   a. $550 per month for 14 years to plaintiff's conservatorship for his pain and suffering.

   b. $200 per month to be divided equally between plaintiff's parents as compensation for the "impairment of the companionship and enjoyment of their son as allowed by Rule 8 of the Iowa Rules of Civil Procedure."

3. Payment of $15,000 on January 1, 1991 and $20,000 on January 1, 1996 to be equally divided between plaintiff's parents as allowed by Rule 8.

4. Payment of $95,960.25 to plaintiff's attorneys pursuant to a 33% contingency fee agreement and approved by the court pursuant to Iowa Code § 147.138 (1985).

Tr. 344–46.

In February 1984, the Secretary had determined that plaintiff was eligible for SSI benefits because of his severe mental retardation. Tr. 322. On March 26, 1987, plaintiff was notified that he had been overpaid $5,377 in SSI benefits from December 1985 through March 1987, because he had re-

ceived the $550 per month from his settlement agreement. Tr. 353. The determination of overpayment and "unearned income" was affirmed at the reconsideration level on July 19, 1988. Tr. 364. Plaintiff's request to waive the overpayment was also denied. Tr. 389. Both determinations were timely appealed, and two hearings were held on May 24, 1989, and August 3, 1989. The Administrative Law Judge (ALJ) found that plaintiff's settlement income was unearned income precluding receipt of SSI benefits and that his representative payee(s) were not without fault as to the overpayment. Tr. 21.

Plaintiff claims that the ALJ erred in ruling that the settlement proceeds in the amount of $550 per month are unearned income within the meaning of Title XVI of the Social Security Act. He further contends that should this court determine that those proceeds are unearned income, the Secretary's refusal to waive recoupment of the overpayment is not supported by substantial evidence.

### Unearned income

Plaintiff first claims that there is no provision in the Social Security Act or in the promulgated regulations which includes the receipt of compensation from a personal injury suit as income and that the ALJ's decision to cancel his benefits because of the settlement proceeds was therefore based on an unreasonable interpretation of the Act.

■ It is the duty of the court to review the Secretary's determination of eligibility for benefits to determine if it is based on erroneous legal standards or an incorrect application of the law. *Nettles v. Schweiker*, 714 F.2d 833, 835–36 (8th Cir. 1983). The Secretary's interpretation of a statute that he is charged with administering is entitled to substantial deference. *Savage v. Toan*, 795 F.2d 643, 645 (8th Cir.1986) (citing *Connecticut Dep't of Income Maintenance v. Heckler*, 471 U.S. 524, 532, 105 S.Ct. 2210, 2214, 85 L.Ed.2d 577 (1985)). If the Secretary's interpretation is reasonable, judicial approval is prop-

er, even though there are other reasonable interpretations. *Id.*

■ In order to determine whether the Secretary's consideration of plaintiff's settlement proceeds as unearned income was reasonable, it is necessary to examine several provisions of the Social Security Act and its regulations. Title XVI of the Act was enacted "[f]or the purpose of establishing a national program to provide supplemental security income to individuals who ... are ... disabled." 42 U.S.C. § 1381. An individual is eligible for SSI benefits if his annual income and resources are less than a certain amount. 42 U.S.C. § 1382(1). The Act divides income into two categories, earned income and unearned income. *See* 42 U.S.C. §§ 1382a(a)(1), (2). Earned income means "only" wages, net earnings from self-employment, any refund of federal income taxes relating to earned income credit, and remuneration for services in a sheltered workshop or work activities center. 42 U.S.C. § 1382a(a)(1). Unearned income, on the other hand, is defined more broadly as "all other income," including:

(A) support and maintenance furnished in cash or kind ...;

(B) any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits;

(C) prizes and awards;

(D) the proceeds of any life insurance policy ...;

(E) gifts ..., support and alimony payments, and inheritances; and

(F) rents, dividends, interest, and royalties.

42 U.S.C. § 1382a(a)(2). The Secretary has defined an award as "usually something you receive as the result of a decision by a court, board of arbitration, or the like." 20 C.F.R. § 416.1121(f).

The Secretary's definition of income is an expansive one: "anything you receive in cash or in kind that you can use to meet

your needs for food, clothing, or shelter." 20 C.F.R. § 416.1102. A reciprocal definition of what is "not income" is set forth in 20 C.F.R. § 416.1103: "Some things you receive are not income because you cannot use them as food, clothing, or shelter...." This section further provides some examples of items which are not income: medical care and services, social services, receipts from the sale, exchange or replacement of a resource, income tax refunds, payments by credit life or credit disability insurance, proceeds of a loan, bills paid for the applicant/recipient, replacement of income already received, weatherization assistance, and receipt of certain noncash items. 20 C.F.R. § 416.1103(a)-(j). Plaintiff claims that because tort compensation is not specifically listed as an exclusion under § 416.1103, the Secretary's determination that the settlement proceeds are unearned income for the purposes of assessing eligibility for SSI is contrary to law.

In so asserting, plaintiff relies primarily upon the Ninth Circuit's en banc opinion in *Grunfeder v. Heckler,* 748 F.2d 503 (9th Cir.1984). In *Grunfeder,* the Ninth Circuit held that reparation payments made by the German government pursuant to the German Restitution Act were not income to be used in determining eligibility for SSI benefits. *Id.* at 509. The court based its conclusion on Congress's "historical concern for Holocaust victims," Congress's and the Secretary's treatment of analogous payments (e.g., exclusion of federal reparations payments to the Blackfeet, Gros Ventre, and Alaskan Native Americans from SSI eligibility determinations), and principles of international comity. *Id.* This court believes that none of the same concerns present in these reparations cases are at issue when examining whether the inclusion of compensation for personal injury as unearned income is reasonable.

The court further notes that plaintiff places special emphasis upon the concurring opinion of Judge Ferguson in *Grunfeder,* who would hold that since compensation traditionally has been excluded from the definition of income, this "longstanding definition" should not be modified unless Congress specifically states otherwise. *Id.*

at 510. However, the Supreme Court's opinion in *Lukhard v. Reed,* 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987) directly belies that contention. In *Lukhard,* respondents, recipients of personal injury awards who were disqualified from Virginia's Aid to Families With Dependent Children (AFDC), claimed that Virginia's policy of treating personal injury awards as income was inconsistent with the AFDC statute or the Department of Health and Human Services' (HHS) regulations. They, as does plaintiff in the case at bar, sought to derive support from the fact that personal injury awards are not treated as income under the Internal Revenue Code, the Food Stamp program, or the HHS poverty guidelines. *Id.* at 376, 107 S.Ct. at 1812. In finding that personal injury awards could qualify as income under the AFDC statute, the court noted that in each of the above-mentioned statutes or programs,

there is an *express* provision that personal injury awards are not to be treated as income—which causes them not only to fail to support the proposition that the term "income" automatically excludes personal injury awards, but to support the opposite proposition that absent express exclusion it embraces them. Moreover, the fact that Congress was silent in the AFDC statute but has elsewhere been explicit when it wished to exclude personal injury awards from income tends to refute rather than support a legislative intent to exclude them from AFDC computations.

*Id.* (footnote omitted). The Court further states: "For the purpose of determining the application of an existing agency-interpreted statute to a point on which 'Congress did not actually have an intent,' we have held that 'a court may not substitute its own construction ... for a reasonable interpretation made by the administrator of an agency.'" *Id.* at 376 n. 3, 107 S.Ct. at 1812 n. 3 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 845, 104 S.Ct. 2778, 2782, 2783, 81 L.Ed.2d 694 (1984)).

As in the AFDC statute, Congress did not specifically exclude personal injury

awards from the definition of income under the Social Security Act. *See* 20 C.F.R. § 416.1103. Consequently, under *Lukhard,* this court cannot say that the Secretary's inclusion of such compensation as income is unreasonable, especially in light of 42 U.S.C. § 1382a(a)(2)(C) and 20 C.F.R. § 416.1121(f), which specifically include awards from a court as unearned income. *See also Ahrens v. Bowen,* 646 F.Supp. 1041, 1049–50 (E.D.N.Y.1986) (finding award of punitive damages, which is not included in the twelve specific exclusions set forth in 42 U.S.C. § 1382a(b), to be income under the Social Security Act), *rev'd on other grounds,* 852 F.2d 49 (2d Cir.1988).

Plaintiff argues that even if this court should find that compensation for tort victims can be included as income for the purposes of SSI eligibility, his particular compensation should not, since his settlement was not intended to replace any income that he might receive during his lifetime. *See* plaintiff's brief at 9. Plaintiff attempts to differentiate between compensation for economic loss and compensation for pain and suffering by arguing that since his settlement agreement was limited by the provisions of Iowa Code § 147.136,[1] which excludes compensation for economic losses replaced by government benefit programs, the payments he receives from that settlement do not qualify as income.

However, in *Lukhard,* the Supreme Court pointed out that "general and legal sources also commonly define 'income' to mean 'any money that comes in,' ... without a requirement that the transaction producing the money result in a net gain." *Lukhard,* 481 U.S. at 375, 107 S.Ct. at 1812 (citing 5 *Oxford English Dictionary* 162 (1933)). The Court specifically noted that "other typical components of personal injury awards, including compensation for pain

and suffering, can reasonably be treated as gain under the AFDC statute." *Id.* at 375 n. 2, 107 S.Ct. at 1812 n. 2. Consequently, plaintiff's argument that his award is somehow different from other personal injury awards is without merit.

The court recognizes that plaintiff may well have entered into the settlement provision with the understanding that his economic losses would continue to be compensated by receipt of his SSI benefits. However, plaintiff's understanding of Social Security law is not binding upon the Secretary as long as the Secretary's interpretation and application of that law is reasonable. In conclusion, the court finds that the Secretary's determination that plaintiff's receipt of monthly payments as proceeds of his settlement is income is reasonable.

### *Overpayment*

Plaintiff argues that the Secretary's determination that his representative payee(s) are not without fault in the receipt of the $5,377 overpayment is not supported by substantial evidence.

■ In order for the court to affirm the ALJ's findings of fact, those findings must be supported by substantial evidence appearing on the record as a whole. *See, e.g., Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989); *Brand v. Secretary of Dep't of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir.1980). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *accord Cruse,* 867 F.2d at 1184; *Taylor v. Bowen,* 805 F.2d 329, 331 (8th Cir.1986). The court must take into account evidence which fairly detracts from the ALJ's findings. *See Cruse,* 867 F.2d at

---

1. Iowa Code § 147.136 states in pertinent part:
   In an action for damages for personal injury against a physician ... or against a hospital ... based on the alleged negligence of the practitioner ... or upon the alleged negligence of the hospital in patient care, in which liability is admitted or established, *the damages awarded shall not include actual econom-*

ic *losses incurred ... to the extent that those losses are replaced or are indemnified by insurance, or by governmental, employment, or service benefit programs or from any other source except the assets of the claimant or of the members of the claimant's immediate family.*
(Emphasis added.)

1184; *Hall v. Bowen*, 830 F.2d 906, 911 (8th Cir.1987); *Taylor*, 805 F.2d at 331. Substantial evidence requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cruse*, 867 F.2d at 1184 (citing *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)). The court must consider the weight of the evidence appearing in the record and apply a balancing test to contradictory evidence. *Gunnels v. Bowen*, 867 F.2d 1121, 1124 (8th Cir.1989); *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987).

■ Recovery of an overpayment can be waived in this case if plaintiff's representative payee(s), his parents, are without fault as to the overpayment and the recovery would defeat the purpose of the SSI program. *See* 20 C.F.R. § 416.553.

> Whether an individual is "without fault" depends on all the pertinent circumstances surrounding the overpayment in the particular case. The Social Security Administration considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition). Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following:
>
> (a) Failure to furnish information which the individual knew or should have known was material;

> (b) An incorrect statement made by the individual which he knew or should have known was incorrect. . . .

20 C.F.R. § 416.552. A determination of fault depends on an evaluation of "all pertinent circumstances" including the recipient's "intelligence . . . and physical and mental condition." *Califano v. Yamasaki*, 442 U.S. 682, 696–97, 99 S.Ct. 2545, 2555, 61 L.Ed.2d 176 (1979) (quoting 20 C.F.R. § 404.507, which defines "at fault" under Title II of the Social Security Act). " '[T]he decision which must be reached in a fault determination is highly subjective, highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation.' " *Jefferson v. Bowen*, 794 F.2d 631, 633 (11th Cir.1986) (quoting *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir.1984)); *see also* 20 C.F.R. § 416.552 (setting forth subjective criteria).

■ It appears that plaintiff's parents were relying upon the advice of their attorneys that the settlement proceeds were not income. *See* plaintiff's brief at 4. As reasonable and as understandable as that reliance may be, it does not automatically absolve plaintiff's payees from fault. The Eighth Circuit has held that estoppel will not lie against the government on the basis of an unauthorized representation by its agents who are without authority to bind the government. *See Abbott v. Harris*, 610 F.2d 563, 564–65 (8th Cir.1979) (per curiam). Plaintiff's attorneys are *his* agents and not those of the government; they therefore clearly had no authority whatsoever to bind the Secretary. While their attorneys' advice cannot screen plaintiff's payees from liability for the overpayment, it is, however, one of the "pertinent circumstances surrounding the overpayment" which the ALJ should have considered in making his determination.

Plaintiff correctly notes that the ALJ failed to evaluate other pertinent circumstances surrounding the overpayment. While the ALJ acknowledges that plaintiff's mother is illiterate and that his father takes medication which interferes with his cognitive functioning, he quickly disregard-

ed this evidence as irrelevant. *See* Tr. 25. He also completely ignored the fact that plaintiff's mother has an I.Q. of 52. It is important to note in determining whether Dorothy LaBeaux was without fault that the Disability Determination Service had previously concluded that "she did not have the capability of being responsible for hers or anyone else's benefits." Tr. 99 (testimony of Deborah Yankey, a Title XVI SSI Claims Representative). Given that earlier determination, the Secretary's subsequent finding that plaintiff's mother was at fault for failing to report the settlement proceeds as income appears inconsistent.

It appears from the record that Dorothy LaBeaux was the representative payee from February 1984 until at least February 1987, *see* Tr. 348–352, the period of time which encompasses, with the possible exception of March 1987, the entire period for which the Secretary claims recoupment is due. In *Lewin v. Schweiker*, 654 F.2d 631, 633–34 (9th Cir.1981), the Ninth Circuit found that a plaintiff's mental condition "substantially undercut" the ALJ's finding that she should have known that she received an overpayment. As in *Lewin*, both plaintiff's representative payees did not actively participate in the application process but relied upon others to provide the necessary assistance and both appear to have cognitive difficulties. *See* plaintiff's brief at 3–4.

The ALJ also appeared to emphasize the fact that both plaintiff's mother and father signed the settlement document and two statements of Income and Resources. *See* Tr. 25. It does not necessarily follow that because they signed the three documents they knew that the settlement proceeds would be considered income under the Social Security Act. The court also notes that in *Chapman v. Bowen*, 810 F.2d 151 (8th Cir.1986) (per curiam), the Eighth Circuit relied upon a plaintiff's signature as an indication that he was put on notice about his income reporting responsibilities when there was nothing in the record which indicated that the plaintiff was unable to read or understand the requirements. *Id.* at 152–53. That is clearly not the case here where plaintiff's mother is illiterate and both parents apparently relied upon the advice of their attorneys and others to understand the requirements.

Where the Secretary makes an erroneous factual determination, a court should remand for further consideration. *See Beeler v. Bowen*, 833 F.2d 124, 127 (8th Cir. 1987) (citing *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir.1987)). The court finds that the ALJ has failed to consider all of the evidence relevant to plaintiff's claim that his representative payees are without fault. Consequently, the court will remand this case to the ALJ for consideration of all the factors set forth in § 416.552 and discussed herein.

ORDER:

Accordingly, It Is Ordered:

1. Plaintiff's motion for summary judgment seeking reversal of the Secretary's decision and request for an oral hearing, filed September 11, 1990, is denied.

2. The Secretary's decision on the issue of whether the settlement proceeds are income within the meaning of Title XVI of the Social Security Act is affirmed. The issue of whether the recoupment of the overpayment should be waived is remanded to the Secretary for further consideration in light of the text of this order.

Done and Ordered.