The STATE OF GEORGIA, DEPARTMENT OF MEDICAL ASSISTANCE, By and Through Its Commissioner, Russell TOAL, and Atlanta Legal Aid Society, Petitioners,

v.

Donna SHALALA, Secretary of the United States Department of Health and Human Services, and The United States Department of Health and Human Services, and The Health Care Financing Administration, Respondents.

No. 92–9106.

United States Court of Appeals, Eleventh Circuit.

Dec. 9, 1993.

Rehearing Denied Jan. 21, 1994.

Mary Foil Russell, Asst. Atty. Gen., Charles R. Bliss, Atlanta Legal Aid Soc., Atlanta, GA, for petitioners.

Henry Eigles, Office of Gen. Counsel, Dept. Health and Human Services, Baltimore, MD, for respondents.

Before ANDERSON and BLACK, Circuit Judges, and NANGLE *, Senior District Judge.

BLACK, Circuit Judge:

This appeal requires us to determine whether the United States Department of Health and Human Services (HHS or "the Secretary"), Health Care Financing Administration (HCFA), properly interpreted sections of the Medicaid statute involving the calculation of income to determine a recipient's or an applicant's [1] Medicaid eligibility when it disapproved the methodology proposed by the State of Georgia.

Georgia proposed to calculate income by excluding Social Security benefits that are withheld in one pay period because of an overpayment in an earlier pay period. HCFA rejected Georgia's proposal primarily because calculating income without including withheld Social Security benefits would allow applicants to be Medicaid eligible who had incomes above the statutory maximum level for federal financial participation (FFP), while at the same time permitting the state to receive federal financial assistance. We grant Georgia's petition for review and hold that HCFA permissibly construed the Medicaid statute. Accordingly, we affirm HCFA's ruling.

## I. BACKGROUND

Medicaid is a cooperative federal-state program under which federal financial assistance is given to states that choose to reimburse certain costs of medical treatment for needy applicants. Applicants are needy, and therefore eligible for assistance, depending on what income and resources are available to them. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). States do not have to participate in the Medicaid program but if they do, they must develop a plan containing reasonable standards for determining an applicant's eligibility for assistance. The state plans must comply with the federal statute and with HHS' requirements. *Id.* at 37, 101 S.Ct. at 2637.

Federal financial participation is available to states that meet the federal statutory and administrative requirements, including requirements encompassing the state's determination of an applicant's income eligibility. *Id.* at 36–37, 101 S.Ct. at 2636–2637. Georgia's Medicaid plan adopts the statutory maximum level of income at which applicants may be eligible for Medicaid and the state still receive federal funds.[2]

---

* Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

1. The statute applies to recipients and applicants. For ease of reference, the opinion refers to both groups by the single term "applicants."

2. States that accept federal Medicaid funds must provide assistance for the "categorically needy," those applicants who are eligible for cash assistance under Supplemental Security Income for the Aged, Blind, and Disabled (SSI) or under Aid to Families with Dependent Children. 42 U.S.C. § 1396a(a)(10)(A)(i). States may provide assistance to the "optional categorically needy," those

applicants who are eligible for SSI but not receiving it or who are ineligible for SSI but meet other statutory criteria. *Id.* § (ii).

According to Georgia, its proposed amendment would primarily have affected nursing home residents who receive Title II Old Age, Survivors, and Disability Insurance benefits. Georgia's plan amendment proposed to change the income-eligibility calculation for optional categorically needy applicants under § 1396a(a)(10)(A)(ii)(V) (medically institutionalized), (VI) (home or community-based services), and would have affected applicants under § 1396a(a)(10)(E)(i) (qualified medicare beneficiaries) and (ii) (qualified disabled and working individuals).

Georgia proposed to amend its Medicaid plan to adopt a "less restrictive methodology" pursuant to 42 U.S.C. § 1396a(r)(2), which permits the states to use a methodology for determining Medicaid income eligibility that is the same as or less restrictive than the methodology used in determining income eligibility for Supplemental Security Income (SSI). The proposed income-eligibility methodology excludes from the calculation of income Social Security benefits that are withheld due to an earlier overpayment. The proposed amendment reads: "Title II income considered as countable income in determining eligibility is based on income received rather than income entitlement if the payment is reduced to recover a previous Title II overpayment." That is, in order to determine Medicaid eligibility, Georgia would count as income only Social Security benefits that were actually received in-hand; the amounts withheld would not be counted as part of an applicant's income. Georgia proposed its plan amendment in particular to ease the plight of persons in nursing homes who apply for Medicaid, are credited with receiving more income than they actually receive when a prior overpayment is deducted from a current check (sometimes the entire amount of the check), and may be left with inadequate income to pay for their nursing home care.

HCFA disapproved the proposed amendment primarily on the basis of another section of the Medicaid statute, § 1396b. That section establishes the upper income limit at which certain applicants may be eligible for Medicaid and the state still receive FFP. § 1396b(f)(4)(C). HCFA determined that Georgia's proposed methodology would permit applicants to be eligible for Medicaid even though they have incomes above the maximum for FFP, a result that primarily derives from Georgia's income eligibility level being set at the maximum permitted under § 1396b(f)(4)(C). HCFA also determined that the proposed amendment would hamper efficient administration of the Medicaid program.

Georgia appealed HCFA's initial disapproval and requested a hearing. The hearing officer recommended affirming the initial disapproval. Georgia then filed exceptions to the hearing officer's recommended decision, and the HCFA Administrator issued the final agency decision affirming the disapproval. Georgia appealed to this Court. 42 U.S.C. § 1316(a)(3).

## II. STANDARD OF REVIEW

■ The Supreme Court established the standard for an appellate court's review of agency decisions in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[3] The first step in the *Chevron* two-step review is to determine whether Congress has directly and unambiguously spoken to the precise question at issue. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Under common statutory interpretation principles, this Court must look at the "particular statutory language at issue, as well as the language and design of the statute as a whole." *Sullivan v. Everhart*, 494 U.S. 83, 89, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988)). Statutory interpretation is within the special competence of the courts. If congressional intent is clear and the agency action is contrary, then that action must be set aside by the judiciary. *Chevron*, 467 U.S. at 843 n.9, 104 S.Ct. at 2782 n.9.

If Congress has not spoken directly to the issue, or the statutory provision is ambiguous, then we reach the second step of the *Chevron* analysis: whether the agency's construction of the statute is permissible and consistent with congressional intent. If the agency's interpretation reflects a permissible construction of the statute and a reasonable reconciliation of conflicting policies, a reviewing court may not substitute its own judgment, but must defer to the agency interpre-

---

HCFA rejected the amendment for all but § 1396a(a)(10)(E)(i), for whom the plan amendment was approved because the FFP statutory maximum income does not apply to that group.

**3.** The *Chevron* doctrine applies to our review of the Secretary's administration of the Medicaid program. *Sullivan v. Everhart*, 494 U.S. 83, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990).

tation. *Chevron,* 467 U.S. at 842–45, 104 S.Ct. at 2781–2783. Indeed, as the Supreme Court recently stated, "the resolution of ambiguity in a statutory text is often more a question of policy than of law.... When Congress ... has delegated policy-making authority to an administrative agency, the extent of judicial review of the agency's policy determinations is limited." *Pauley v. Bethenergy Mines, Inc.,* 501 U.S. ——, ——, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991) (citations omitted).

Even if its position has changed across time, the agency's interpretation is still due deference, although the consistency of its position is a factor in the extent of deference given. *Good Samaritan Hosp. v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2161, 124 L.Ed.2d 368 (1993); *Bethenergy Mines,* —— U.S. at ——, 111 S.Ct. at 2535; *see also Chevron,* 467 U.S. at 863–64, 104 S.Ct. at 2791–92 (changes in agency interpretation do not mean that a court should not accord deference to the interpretation). On the other hand, the Supreme Court has cautioned that:

> We have never applied the principle of [deference] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice. To the contrary, we have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that 'Congress has delegated to the administrative official and not to appellate counsel the responsibility for

elaborating and enforcing statutory commands.'

*Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988) (quoting *Investment Co. Institute v. Camp,* 401 U.S. 617, 628, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971)).

### III. DISCUSSION

#### A.

In appreciation of the well-recognized complexity and "Byzantine construction" of the Medicaid statute, *Gray Panthers,* 453 U.S. at 43, 101 S.Ct. at 2639, we first identify in some detail the statutory and regulatory provisions applicable to our decision. This appeal involves an interaction between Medicaid, a medical assistance program, and the SSI statute, a cash assistance program. The Medicaid sections pertinent to this appeal include § 1396a, which specifies what the state plans for medical assistance must include, and § 1396b, which outlines the FFP in the program. The pertinent SSI section is § 1382a, which defines the term "income" for SSI and, by cross-reference, for § 1396b.

In particular, §§ 1396a(a)(17)(B) and (r)(2) require a state to establish reasonable standards for determining an applicant's income eligibility. Section 1396a(a)(17)(B) states that the income-eligibility methodology must take into account income and resources that are available to the applicant.[4] Section 1396a(r)(2)(A)(i) permits a state to determine income eligibility by using a methodology that is "less restrictive" than the SSI meth-

---

4. Section 1396a(a)(17) reads in relevant part: [A State plan for medical assistance must—]
....
(17) except as provided in subsections (1)(3), (m)(3), and (m)(4) of this section, include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan who are not receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, and with respect to whom supplemental security income benefits are not being paid under subchapter XVI of this chapter, based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility

for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter) as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits....

odology, and (r)(2)(B) defines less restrictive as permitting additional individuals to be eligible for medical assistance than would otherwise be eligible. Section 1396a(r)(2), enacted in 1988, reads in relevant part:

> (2)(A) The methodology to be employed in determining income and resource eligibility for individuals under subsection (a)(10)(A)(i)(III), (a)(10)(A)(i)(IV), (a)(10)(A)(i)(VI), (a)(10)(A)(i)(VII), (a)(10)(A)(ii), (a)(10)(C)(i)(III), or (f) of this section or under section 1396d(p) of this title may be less restrictive, and shall be no more restrictive, than the methodology—
>
>> (i) in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program under subchapter XVI of this chapter....
>
>> (B) For purposes of this subsection ... methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.

On the other hand, § 1396b defines the parameters of federal payment to states, that is, FFP's role in the Medicaid program. Section 1396b(f), entitled "Limitation on Federal participation in medical assistance," in relevant part exempts certain applicants from the limitations, § 1396b(f)(4), and limits FFP for certain applicants to only those whose income does not exceed the level defined in § 1396b(f)(4)(C). Thus, § 1396b(f)(4) establishes the maximum in-

come certain applicants may have and be eligible for Medicaid supported by FFP.[5] Section 1396b(f)(4) does not exempt from the FFP limitations those applicants who would primarily benefit from Georgia's proposed methodology. *Compare* note 5 *with* note 2.

The income maximum in § 1396b(f)(4)(C) specifically cross-references the SSI definition of income under § 1382a. *See* note 5. Thus, § 1382a[6] defines income not only for purposes of SSI, but also for purposes of determining the Medicaid income-eligibility of certain applicants.

The Secretary has promulgated regulations defining income for purposes of SSI pursuant to § 1382a. 20 C.F.R. pt. 416 (1993). The SSI regulation notes that income may include more or less than a person receives, *id.* § 416.1102, and specifically defines income to include the amount of income withheld due to an earlier overpayment:

> We include more than you actually receive where another benefit payment (such as a Social Security insurance benefit) (see § 416.1121) has been reduced to recover a previous overpayment. You are repaying a legal obligation through the withholding of portions of your benefit amount, and the amount of the debt reduction is also part of your unearned income.

*Id.* § 416.1123(b)(1).

Medicaid regulations promulgated pursuant to § 1396b(f)(4)(C) incorporate the FFP income requirements and the SSI link. 42

---

5. Section 1396b(f)(4)(C) reads:

> (4) The limitations on payment imposed by the preceding provisions of this subsection shall not apply with respect to any amount expended by a State as medical assistance for any individual described in section 1396a(a)(10)(A)(i)(III), 1396a(a)(10)(A)(i)(IV), 1396a(a)(10)(A)(i)(V), 1396a(a)(10)(A)(i)(VI), 1396a(a)(10)(A)(i)(VII), 1396a(a)(10)(A)(ii)(IX), 1396a(a)(10)(A)(ii)(X), or 1396d(p)(1) of this title or for any individual—
> ....
> (C) with respect to whom there is being paid, or who is eligible, or would be eligible if he were not in a medical institution, to have paid with respect to him, a State supplementa-

ry payment and is eligible for medical assistance equal in amount, duration, and scope to the medical assistance made available to individuals described in section 1396a(a)(10)(A) of this title, but only if the income of such individual (as determined under section 1382a of this title, but without regard to subsection (b) thereof) does not exceed 300 percent of the supplemental security income benefit rate established by section 1382(b)(1) of this title,

at the time of the provision of the medical assistance giving rise to such expenditure.

6. Section 1382a states that income means both earned income and unearned income, and gives the Secretary authority to prescribe standards. *See* § 1382a(b).

C.F.R. pt. 435 (1992). The pertinent regulation reads: [7]

> For recipients in institutions whose Medicaid eligibility is based on a special income standard ... FFP is available in expenditures for services provided to those individuals only if their income before deductions does not exceed 300 percent of the SSI benefit amount....

*Id.* § 435.1005.

Regulations defining "available" or "less restrictive" have not been promulgated pursuant to § 1396a. In March 1989, however, seven months before Georgia proposed its plan amendment, HCFA issued State Medicaid Manual Transmittal No. 33, a publication that explains to the states how HCFA applies statutory and regulatory provisions in administering the Medicaid program. Transmittal No. 33 addressed the states' statutory authority to use a "less restrictive" Medicaid income-eligibility methodology than the SSI methodology, and it embodied the agency's policy that FFP limits set the maximum within which liberal methodologies may be utilized. Transmittal No. 33 told the states that, in order to ensure compliance with the maximum for FFP, HCFA would disapprove "plan policies which will result in FFP limits being exceeded." HCFA, State Medicaid Manual Transmittal No. 33, at 2 (Mar.1989).

### B.

Both parties contend that Congress has spoken directly—although in opposite directions—on this issue, and both highlight portions of the long and complex legislative history of § 1396a to support their opposing points of view. Intervenor, Atlanta Legal Aid Society, cites to legislative history it claims reveals congressional intent that § 1396a's provisions "are designed so that the States will not assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available." S.Rep. No. 404, 89th Cong., 1st Sess. 78 (1965). Georgia points to legislative history it contends shows that since the early 1970's Congress has given the states more flexibility in administration of the Medicaid program and the Secretary less oversight. It argues that HCFA's disapproval of its proposed methodology is contrary to the congressional intent motivating § 1396a(r)(2)'s flexibility in permitting states to select a less restrictive methodology for determining eligibility for medical assistance than the methodology used for cash assistance programs.

In contrast, HCFA cites legislative history specifying that, although the states would have more flexibility in Medicaid eligibility determinations:

> Medicaid eligibility cannot be broadened by changing other Medicaid requirements. For example, the moratorium does not eliminate the limits on income and resources of eligible individuals and families under [1396b(f) ] (including the requirements that ... income of individuals receiving a State supplementary payment in a medical institution or receiving home and community-based services under a special income standard not exceed 300% of the SSI standard).

S.Rep. No. 100–109, 100th Cong., 1st Sess. 24–25 (1987).

■ Aside from their differing perspectives on congressional intent, the parties also promote different readings of the statute. Georgia and the Intervenor emphasize § 1396a(r)(2)'s clear terms that permit a less restrictive methodology for determining Medicaid income-eligibility than the SSI methodology, the section's absence of a direct reference to the income maximum estab-

7. In 1989, the Secretary published a "Notice of Proposed Rulemaking" that proposed an amendment to 42 C.F.R. § 435.1005 to specifically incorporate a reference to SSI methodology. 54 Fed.Reg. 39421, 39446 (Sept. 26, 1989). The amendment was to have been effective February 18, 1993, 58 Fed.Reg. 4908, 4933 (Jan. 19, 1993), but the effective date has been delayed to August 1994. 58 Fed.Reg. 44457 (Aug. 23, 1993). The Intervenor asserts that the proposed amendment to include the phrase "as determined by SSI budget methodology" is a substantive change that demonstrates the Secretary's erratic regulatory posture. We find this argument without merit. United States Code § 1396b(f)(4)(C) refers by its terms to provisions of the SSI statute, and we do not consider the proposed change to the regulation a substantive one. We agree with HCFA that the amendment simply clarifies what the statute requires—that income be determined under § 1382a of the SSI statute and its implementing regulations.

lished in § 1396b(f)(4)(C), and the "availability principle" of § 1396a(a)(17)(B). They contend there is nothing in the plain language of § 1396a(r)(2) that indicates the state's flexibility is limited by the FFP maximum or that cross-references any limitations on a state's flexibility. Similarly, nothing in § 1396b defines eligibility criteria for Medicaid; it merely establishes which applicants federal funds are available to assist. Further, they contend that the SSI regulation defining income is in conflict with Medicaid's availability principle and so should be declared inapplicable to Medicaid. They also submit that Transmittal No. 33 was not a properly promulgated rule, so that it cannot be relied on as a basis for rejecting the proposed amendment.[8]

In contrast, HCFA asserts that Congress did not intend to nullify the FFP income-eligibility maximum when it granted the states some additional flexibility in determining Medicaid eligibility. HCFA further contends that the meaning of "available" income must be defined within the full statutory scheme. That is, § 1396a must be read *in pari materia* with § 1396b, so that its flexi-bility is limited by the FFP income maximum in § 1396b, and availability is defined by the cross-reference to income as defined by SSI. In other words, according to HCFA, § 1396b sets the limit beyond which the states may not go in their determination of income-eligibility in their state plans in order to receive FFP.

## C.

Under *Chevron*, we must first determine whether Congress has directly and unambiguously spoken to the question presented in this appeal. In our view, it has not. Congress left an interpretive gap between the statutory income-eligibility provisions in § 1396a and the FFP provisions in § 1396b. The Medicaid statute does not clearly state whether the less restrictive methodology permitted by § 1396a is to be defined within the parameters set by § 1396b. Nor does § 1396a reveal congressional intent regarding its operation in states that have adopted the maximum level of Medicaid income-eligibility. In the same vein, the language of § 1396b does not unambiguously express

---

8. We are presented with the situation where an agency with express rule-making authority has not promulgated a rule pursuant to § 1396a, but we do not consider the absence of a regulation promulgated under that specific section to be fatal to the agency position. Some commentators have suggested that the *Chevron* doctrine may not apply when an agency that has been given rule-making authority has not promulgated a rule that answers the particular question raised by the case. *E.g.*, Cass R. Sunstein, *Law and Administration after Chevron*, 90 Colum.L.Rev. 2071, 2093 (1990). We disagree, although we understand and appreciate the value of the rule-making process, with its accompanying public input. An agency's interpretation of the statute over which it has been delegated administrative authority is entitled to deference, however, when that interpretation is given through well-established and communicated administrative practices, such as Transmittal No. 33, in the same manner that an action taken by an agency that does not have rule-making authority is given deference under *Chevron*. *See, e.g., National R.R. Passenger Corp. v. Boston & Maine Corp.*, —— U.S. ——, ——–——, 112 S.Ct. 1394, 1401–02, 118 L.Ed.2d 52 (1992) (applying *Chevron* principles to an Interstate Commerce Commission order); *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 647–48, 110 S.Ct. 2668, 2676–77, 110 L.Ed.2d 579 (1990) (applying *Chevron* principles to the Pension Benefit Guaranty Corporation's decision to terminate ERISA pen-sion plans); *see also Bowen*, 488 U.S. at 212, 109 S.Ct. at 473 (noting that the deference principle is not applicable to agency litigating positions that are not supported by regulations, rulings, or administrative practice).

A rule would be preferable, but we are not convinced that the agency is required to promulgate rules pursuant to every subsection of the widely-acknowledged complex Medicaid statute. *See also Emerson v. Steffen*, 959 F.2d 119, 122 (8th Cir.1992) (*Chevron* does not require "that the agency's position be stated in a regulation to be entitled to deference.") In any event, HCFA spoke directly to the states on this question through Transmittal No. 33, which we recognize as administrative practice. *Cf. Lukhard v. Reed*, 481 U.S. 368, 377–78, 107 S.Ct. 1807, 1812–13, 95 L.Ed.2d 328 (1987) (plurality opinion) (accepting the Secretary's definition of income to include personal injury awards as expressed in its Handbook of Public Assistance Administration and in Memoranda). This is not a case where the agency is espousing a post-hoc appellate rationalization for its adjudicatory action, thereby implicating *Bowen*. 488 U.S. at 212, 109 S.Ct. at 473. *See also Himes v. Shalala*, 999 F.2d 684 (2d Cir.1993) (deciding appeal wherein HCFA disapproved New York's proposed plan amendment to disregard certain items as "available income" under § 1396a(a)(17)(B) based in part on Transmittal No. 33).

that the section is applicable to the income-eligibility methodology states may employ to calculate income.

■ We also consider the legislative history inconclusive on congressional intent, as exemplified by the examples given above. We conclude that Congress did not speak precisely to the question of whether, in permitting states to use a less restrictive methodology to calculate Medicaid income-eligibility than the SSI methodology, it intended that the maximum income for FFP could be violated and the state still receive federal funds. The Secretary has authority to fill the interpretive gap left by Congress. *See Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781 (an agency administering a congressionally-created program has power to fill any explicit or implicit gap left by Congress).

The statute unambiguously expresses congressional delegation of administrative authority to the Secretary. Further, we read the phrase "less restrictive than" in § 1396a(r)(2)(A) as a congressional delegation of interpretive authority to the Secretary, *cf. Pauley,* — U.S. at ——, 111 S.Ct. at 2533–34 (reasoning that the phrase "not ... more restrictive than" in the Black Lung Benefits Act reflects clear congressional intent to delegate interpretive authority to the Secretary of Labor), because the accompanying definition of "less restrictive" in § 1396a(r)(2)(B) falls in the interpretive gap Congress left between § 1396a and § 1396b. We conclude that deference to the Secretary is appropriate. *Id.* at ——, 111 S.Ct. at 2534.

This appeal therefore takes us to the second step of *Chevron,* which requires us to determine whether the Secretary's position is reasonable, that is, whether HCFA permissibly construed the Medicaid statute and reasonably reconciled conflicting policies. In our view, HCFA did both.

■ We recognize and appreciate the distinction between the medical assistance provided by Medicaid and the cash assistance provided by SSI, and we are not devoid of sympathy for the plight of those applicants Georgia is attempting to assist. Nevertheless, when faced with a gap in a statutory program, the nature of our role is clear:

"Judicial deference to an agency's interpretation of ambiguous provisions of the statutes it is authorized to implement reflects a sensitivity to the proper roles of the political and judicial branches." *Id.* For the following reasons, we determine that the Secretary's position is not contrary to congressional intent and is reasonable.

We disagree with Georgia's and the Intervenor's contentions that the definitions of "available" and "less restrictive" in § 1396a should be construed and applied independently from the FFP maximum income established in § 1396b. It is a well-established principle of statutory construction that a court must look to the statutory design as a whole. *E.g., Everhart,* 494 U.S. at 89, 110 S.Ct. at 964. When viewed in its entirety, the Medicaid program consistently gives the Secretary authority to establish standards against which state plans are measured, and Congress expressly delegated the Secretary authority to define the meaning of available income. Section 1396a(a)(17)(B) specifies that state plans must "provide for taking into account only such income and resources as are, *as determined in accordance with standards prescribed by the Secretary,* available to the applicant or recipient...." (Emphasis added.) Likewise, through its reference to the SSI definition of income, the FFP definition of income in § 1396b(f)(4)(C) incorporates standards defined by the Secretary. It is a reasonable and permissible construction of § 1396a(r) to define its "less restrictive" methodology for calculating income within the income standards prescribed by the Secretary.

Further, as part of a cooperative federal-state program, § 1396a and § 1396b are undeniably linked. As our discussion above reveals, § 1396b sets the FFP parameters, while § 1396a defines the elements of the states' plans necessary to receiving the federal funds. When, as in this case, the statutory conditions apply to the same groups of applicants, it is entirely reasonable to construe the statute such that FFP sets the upper bound of an applicant's income eligibility.

We also disagree with the Intervenor's contention that Medicaid's "availability principle" must override other policy consider-

ations. Pursuant to its authority, HHS has developed an intricate regulatory framework defining "available" income. Reviewing courts commonly apply the income-defining regulations when assessing the Secretary's construction of "available" income in diverse settings. *E.g., Peura v. Mala,* 977 F.2d 484, 486 & n. 2 (9th Cir.1992) (approving state Medicaid administrator's determination that child support and withheld federal tax should be counted as available income, pursuant to 42 C.F.R. § 435.725, a regulation that was not promulgated pursuant to § 1396a); *Emerson v. Steffen,* 959 F.2d 119 (8th Cir.1992) (several regulations governing eligibility standards for medically needy are relevant to determining availability). This practice is consistent with the Supreme Court's approach to reviewing the Secretary's determination of available income. In *Gray Panthers,* for example, the Supreme Court was untroubled by the lack of a regulation defining "available" when it reviewed the Secretary's position on "deeming," another regulatory feature of the definition of income. 453 U.S. 34, 101 S.Ct. 2633. Available income, then, is defined through the Secretary's regulatory structure defining income.[9] Congress itself established the link between SSI-defined income and Medicaid's definition of income in § 1396b. Under the Secretary's regulatory definition of income applicable to the Medicaid program, benefits withheld due to a prior overpayment are counted as income.

The Secretary's position is a reasonable accommodation of conflicting policies. States' receipt of federal funds is specifically limited to applicants whose income does not exceed the statutory maximum. Georgia's proposed amendment is designed to change the calculation of income so an applicant's income that would otherwise exceed the maximum no longer does so. Indeed, because there is no need to exclude the withheld income if, by including it, the applicant's income would not exceed the maximum, the proposed methodology would operate only when an applicant's income would exceed the

statutory maximum if the amount of withheld benefits were counted.

HCFA's ruling does not leave Georgia without options. It may lower its income-eligibility standard from the statutory maximum, or it may still choose to exclude withheld income from its income-eligibility determinations and forego federal funds. Under *Chevron,* however, this Court does not have the option to substitute its own judgment for that of the federal agency to whom Congress delegated administrative authority for the Medicaid program.

## IV. CONCLUSION

Because we determine that the agency's construction of the statute is permissible, we do not reach the other issues raised on appeal. For the reasons stated above, the petition for review is granted and the order is affirmed.

GRANTED and AFFIRMED.

---

9. Likewise, the "less restrictive" methodology is given meaning by reference to the definition of income eligibility, both in the statute and in the

Secretary's administrative practice as expressed through Transmittal No. 33.