**Frances STEINER, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**Michael DOWLING, Commissioner, New York State Department of Social Services, Defendant.**

**Harold OTIS, Ramon Vargas, Donald Miller, Alfred Bulson, Emmett Connally, Madeline Montario and Frances Hickok, Plaintiffs,**

v.

**Michael DOWLING, Commissioner, New York State Department of Social Services, Defendant.**

Nos. 93–CV–1132, 94–CV–84.

United States District Court, N.D. New York.

May 31, 1995.

Norma E. Hogan, Albany, New York, for Plaintiffs.

---

Dennis C. Vacco, Attorney General, State of New York, Department of Law, Albany, New York (Judith I. Rattner, Assistant Attorney General, of counsel), for Defendant.

## MEMORANDUM DECISION
## AND ORDER

CHOLAKIS, District Judge.

Presently before the Court is a motion for partial summary judgment brought by the various plaintiffs in these two companion cases, and a cross-motion for summary judgment on behalf of the common defendant, Michael Dowling, Commissioner, New York State Department of Social Services.

In these two cases, plaintiffs contend that 18 NYCRR § 360.4–4(c)(2)(iii)(c) was in violation of the federal Medicaid law, 42 U.S.C. § 1396p(c)(1), as that section of the federal Medicaid law existed during the thirteen month time period of September 9, 1992 (the effective date of 18 NYCRR § 360–4.4(c)(2)(iii)(c)) through August 10, 1993 (the effective date of the 1993 amendments to 42 U.S.C. § 1396p(c)(1)). At issue is New York's method of calculating the period of Medicaid ineligibility for an individual who has made a prohibited transfer of assets (*i.e.* a transfer which otherwise made that individual eligible for Medicaid assistance by decreasing that person's financial assets—thus making them "artificially destitute").

Specifically relevant to the application of the State's regulations, federal Medicaid law imposes guidelines, under 42 U.S.C. § 1396a(a)(10)(A)(ii)(V), upon states that elect to offer medical assistance to individuals residing in a medical institution for a period of not less than thirty consecutive days. Prior to August 10, 1993, these guidelines provided that:

[T]he State plan must provide for a period of ineligibility for nursing facility services . . . in the case of an institutionalized individual . . . who, or whose spouse at any time during or after the 30–month period immediately before the date the individual becomes an institutionalized individual . . . or . . . the date the individual applies for such assistance while an institutionalized individual disposed of resources for less than fair market value. ***The period of***

***ineligibility shall begin with the month in which such resources were transferred*** and the number of months in such period shall be equal to the lesser of—

(A) 30 months, or

(B)(i) the total uncompensated value of the resources so transferred, divided by (ii) the average cost, to a private patient at the time of the application, of nursing facility services in the State or, at State option, in the community in which the individual is institutionalized.

42 U.S.C. § 1396p(c)(1) (emphasis added).

42 U.S.C. § 1396p(c)(4) further provides that:

[A] state . . . may not provide for any period of ineligibility for an individual due to transfer of resources for less than fair market value except in accordance with this subsection.

Prior to the enactment of the subsection at issue in this case, *i.e.*, (c)(2)(iii)(c), it appears that the application of the then existing State regulation resulted in concurrent periods of ineligibility for multiple transfers of assets. By way of example: An applicant who lived in a county where the regional nursing home rate was $3,000 per month and who transferred $60,000 in a *single* month was ineligible for a period of 20 months (*i.e.*, $60,000 divided by $3,000 equals 20). However, if that applicant had, instead, transferred half of those resources in one month, and the other half the following month, two separate 10–month periods of ineligibility were the result; and these periods of ineligibility would have each begun with the month of transfer. As a result, because the transfers were only a month apart, the periods of ineligibility overlapped by nine months and the total period of ineligibility was only 11 months rather than the 20 months which occurred under a single transfer. *See* Defendant's Memorandum of Law, p. 7.

Plaintiffs contend that this methodology—used by New York to provide for concurrent periods of ineligibility—*was* in accordance with § 1396p(c)(1), as required § 1396p(c)(4). In essence, plaintiffs contend that § 1396p(c)(1) *specified* the use of a methodology which would result in concurrent periods

of ineligibility in the case of multiple transfers.

On or about October 9, 1990, the United State Department of Health and Human Services ("HHS"), issued Medicaid State Operations Letter # 90–87 as, *inter alia,* a

clarification of the method to be used in determining the period of ineligibility for persons who transfer resources without receiving fair market value more than once during a 30–month period. The question is whether such periods should be treated separately and any periods of ineligibility run concurrently or should they be treated as one transfer.

*HHS Medicaid State Operations Letter # 90–87,* p. 1 (attached to Affirmation of Judith I. Ratner).

"[A]lthough the concurrent approach is a reasonable one[,]" HHS went on to "suggest" the consideration of the following "modification:"

A State could regard any transfer that an individual could have made in one step, but instead chooses to make into two or more steps during a period when the individual would be subject to restricted coverage, as being in fact a transfer. This rule would apply in any situation in which an individual had the full amount of resources available at the time of the first transfer and could have made the transfer all at once, but chose not to.

*Id.*

Thereafter, effective September 9, 1992, New York amended 18 NYCRR § 360–4.4, to include subsection (c)(2)(iii)(c):

(iii) *Period of Ineligibility.*

(a) Any transfer made under this paragraph will cause the applicant/recipient to be ineligible for: nursing facility services; for a level of care equivalent to that of nursing facility services provided in a hospital; and for care, services, or supplies provided pursuant to a waiver under section 1915(c) of the Federal Social Security Act. Such person will remain ineligible for such services for the lesser of:

(1) 30 months from the date of the transfer; or

(2) a period equal to the uncompensated value of the transferred resources divided by the average cost of care to a private patient for skilled nursing facility services in the region in which such person is institutionalized, on the date the person first applies or recertifies for MA as an institutionalized person.

(b) *For purposes of this subparagraph:*

(1) uncompensated value is the fair market value of the resources at the time it was transferred, less any compensation received for the resources; and

(2) the cost of care to a private patient in the region in which the person is institutionalized will be presumed to be 120 percent of the average MA rate for skilled nursing facility care for the facilities within the region. The average regional rate will be updated each January 1st by the department. Regions shall be the same as those established by section 2807–c of the Public Health Law.

(c) Notwithstanding the provisions of clause (a) of this subparagraph, *multiple transfers of resources within a 30–month period will be considered to be a single transfer of the total amount of such resources, and the period of ineligibility required by clause (a) will run from the date of the first transfer,* to the extent that:

(1) the resources were available at the time of the first transfer and could have been transferred all at once; and

(2) treating the transfers as separate would result in concurrent periods of ineligibility and in a shorter total period of ineligibility than if the transfers are considered to be a single transfer.

18 NYCRR § 360–4.4(c)(2)(iii)(c) (emphasis added).

New York's Notice of Adoption reveals that the purpose of subsection (c)(2)(iii)(c) was "[t]o *amend* the medical assistance transfer-of-resources rule to treat multiple transfers of resources as a single transfer under certain circumstances." *N.Y. Register,* Sept. 9, 1992, p. 34. The objective was to "promot[e] the public health and welfare and for promoting the State's goal of making

uniform, high-quality medical care available for everyone ... [thereby] requir[ing] the department [of Social Services] to promulgate any regulations which are *consistent* with federal and State law." *Id.* (emphasis added). In discussing the "needs and benefits" of this regulation, specific reference was made to the statement by HHS "that it is reasonable to interpret [§ 1396p(c)(1) ] as allowing such multiple transfers to be treated as a single transfer under certain circumstances; [recognizing that] to do otherwise would eliminate the connection between the total amount of resources transferred and the length of the period of MA ineligibility." *Id.*

Plaintiffs contend that this regulation—despite its apparent conformity with the "clarification" and "suggested modification" of Medicaid State Operations Letter # 90–87—was, nevertheless, inconsistent and *not* in accordance with 42 U.S.C. § 1396p(c)(1), as it existed at that time; and therefore, in violation of 42 U.S.C. § 1396p(c)(4).[1]

Accordingly to plaintiffs, not until the subsequent amendment of 42 U.S.C. § 1396p(c)(1), on August 10, 1993, did the federal guidelines similarly provide that such periods of ineligibility run consecutively:

the number of months of ineligibility under [a State plan] ... shall be equal to—

(I) *the total, cumulative uncompensated value of all assets transferred by the individual* ... on or after the lookback date specified in subparagraph (B)(i), divided by

(II) the average monthly cost to a private patient of nursing facility services in the State (or at the option of the State, in the community in which the individual is institutionalized) at the time of application.

42 U.S.C. § 1396p(c)(1)(E)(i) (emphasis added).

The legislative history demonstrates that this amendment *"tightens* restrictions on divestitures of assets in order to qualify for nursing home care at Medicaid expense ..." H.R.Doc. No. 111, 103rd Cong, 1st Sess., 186 (1993), *reprinted in* 1993 U.S.C.C.A.N. 513 (emphasis added); *See also* H.R.Doc. No. 111, 103rd Cong, 1st Sess., 187 (1993), *reprinted in* 1993 U.S.C.C.A.N. 514 ("The Committee bill achieves these savings primarily by ... *tightening* restrictions on the transfer of assets to qualify for Medicaid nursing home care[.]" (emphasis added)). It also compares the state of the then current law, *i.e.,* § 1396p(c)(1)—under which *"[t]he period of ineligibility begins with the month in which the resources are transferred* and lasts for the number of months equal to the lesser of (1) 30 or (2) the total uncompensated value of the resources transferred divided by the average cost to a private patient of nursing facility services in the State"—to the Committee bill then under consideration, *i.e.,* later enacted as § 1396p(c)(1)(E)(i)—under which "[t]he penalties for different transfers occurring within the 36–month 'look-back' period will run consecutively, not concurrently." H.R.Doc. No. 111, 103rd Cong, 1st Sess., 206–07 (1993), *reprinted in* 1993 U.S.C.C.A.N. 533–34. Consequently, based on this legislative history, 42 U.S.C. § 1396p(c)(1)(E)(i) *could* be viewed as a Congressional *change* in the existing law and not merely a *clarification* of it.[2]

---

1. Plaintiffs also contend that the State's regulation is more restrictive than the methodology used by the Social Security Administration under its Cash Assistance Program, in violation of 42 CFR §§ 435.401(c) & 45.601(d)(vi)(2) [*sic,* 435.601(d)(2) ]. However, this contention is neither sufficiently explained nor seriously advanced by plaintiff's—providing only a single conclusory paragraph in their Statement of Undisputed Facts (*i.e.,* ¶ 13), and in their Attorney's Affirmation (*i.e.,* ¶ 12). Furthermore, neither party provided a copy of these regulations, nor a recital of the relevant portions.

2. In what appears to be the previous Senate's consideration of an unenacted amendment to this section, within the "Medicare & Medicaid Amendments Act of 1992," it was stated that,

[c]urrent law does not specify whether periods of ineligibility run concurrently or consecutively. Thus, if an individual transfers assets in "pieces," penalties for each "piece" run concurrently, effectively reducing the period of ineligibility.

Proposal—Present law would be *clarified* to state that periods of ineligibility run consecutively, not concurrently.

138 Cong.Rec. S15160–01, *S15203, 102d Congress, 2d Sess. (Sept. 25, 1992) (West 1995) (emphasis added).

■ *However,* the Court must also temper its interpretation of the above with the deference properly afforded to HHS's interpretation of prior § 1396(p)(c)(1), as manifested in its Operations Letter # 90–87. In light of the consistency of HHS's position with the later enacted amendment to the statute, the Court is persuaded that this interpretation is entitled to the "considerable weight [that] should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Deel v. Jackson,* 862 F.2d 1079, 1087 (4th Cir.1988) (quoting *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984)); *see also, FDIC v. Philadelphia Gear Corp.,* 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986).

> In a statutory area as complicated as this one, the administrative authorities are far more able than this Court to determine congressional intent in light of experience in the field. *If the result is unacceptable to Congress, it has only to clarify the situation with language that unambiguously specifies its intent.*

*Lukhard v. Reed,* 481 U.S. 368, 383–84, 107 S.Ct. 1807, 1816–17, 95 L.Ed.2d 328 (1987) (Blackmun, J., concurring in the judgment) (emphasis added).

Here, the result plaintiffs complain of was *not* unacceptable to Congress, indeed, its acceptance was made clear by the 1993 amendment. Prior § 1396p(c)(1) did not specifically state that periods of ineligibility should be treated separately and run concurrently, nor did it specifically prohibit the calculation of such periods of ineligibility by considering multiple transfers cumulatively—it merely stated, without elaboration that "[the] period of ineligibility shall begin with the month in which such resources were transferred ..." Nevertheless, HHS interpreted this statute to read, in effect, "[the] period of ineligibility shall begin with the month in which such resources were [*first*] transferred ..."; and

Congress clearly demonstrated its *acceptance* of this interpretation by unambiguously specifying its underlying intent in the amended version of the statute, *i.e.,* § 1396p(c)(1)(E)(i)—which mirrored this earlier interpretation of the HHS. Moreover, Congress's over-riding intent has always been to keep the Medicaid program free of fraud. Thus, there is no "clear manifestation" that Congress had—prior to this amendment—intended to supersede the States power to implement a methodology which resulted in consecutive periods of ineligibility. *See New York State Dep't of Social Services v. Dublino,* 413 U.S. 405, 413–14, 93 S.Ct. 2507, 2512–13, 37 L.Ed.2d 688 (1973).

■ Therefore, considering all of the above, this Court finds that the methodology spelled out in Operations Letter # 90–87, and 18 NYCRR § 360.4–4(c)(2)(iii)(c), New York State's implementation of that methodology,[3] were *not* contrary to 42 U.S.C. § 1396p(c)(1), as that section of the federal Medicaid law existed from September 9, 1992 through August 10, 1993. As a result, because 18 NYCRR § 360.4–4(c)(2)(iii)(c) was in accordance with § 1396p(c)(1) from September 9, 1992 through August 10, 1993, defendant's cross-motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

---

**3.** In additional support of the State's regulation, [t]he [Supreme] Court's opinion in *Dublino* underscores the fact that Congress cannot prescribe every detail of a [complex federal program]. If it could, state agencies would serve no independent purpose. The reality, however, is that state flexibility allows the development of specifically tailored solutions to specific problems, and provides fifty state proving grounds in which the efficacy of administrative innovations can be tested. *Deel,* 862 F.2d at 1083.